# IN THE SUPREME COURT, STATE OF WYOMING

# 2017 WY 68

APRIL TERM, A.D. 2017

*June 8, 2017*

KEVIN JAMES SIMMS,

**Appellant**
**(Defendant),**

**v.**

S-16-0234

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
    *Pro se*

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; James Michael Causey, Senior Assistant Attorney General

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Kevin Simms appeals from the denial of his motion for sentence reduction. His sentence required three concurrent Wyoming sentences for drug offenses to be served consecutively to a federal sentence for possession of a firearm by a felon, which was imposed earlier. His unsuccessful motion asked the Wyoming district court to modify its sentences to run them concurrently with the federal sentence. As noted below, he asks for different relief on appeal. We affirm.

## ISSUES

[¶2]    Simms expressly raises two issues, but his brief appears to advance a third. We therefore restate his claims as follows.

> 1.  Did the district court abuse its discretion in denying the sentence reduction motion without a hearing?

> 2.  Did the district court err in failing to *sua sponte* grant credit against Simms's federal sentence for presentencing confinement served in state custody in relation to his Wyoming prosecution?

> 3.  Did the district court err in failing to *sua sponte* require his state sentences to be served before his federal sentence?

## FACTS[1]

[¶3]    On October 11, 2013, law enforcement officers in Natrona County supervised a confidential informant's controlled purchase of fifty-five grams of a synthetic cannabinoid from Simms.[2] Four days later, they learned from Christopher Cranford that he and Simms had been selling the substance for about two years. They ordered the powdered chemical from China for approximately $1,000 per kilogram and transformed it into "spice" by dissolving it in grain alcohol or ether and then spraying the solution on an unidentified leafy material. Each kilogram yielded approximately fifty-nine pounds of spice. Cranford was in the process of turning his share of the enterprise over to Simms, and to that end introduced him to one of his clients, Becky Browning.

---

[1] Because the state prosecution was resolved by a plea agreement, the following facts are derived from the law enforcement affidavit filed in support of the charges against Simms. With his consent, that document was used to supplement the factual basis for his guilty pleas.

[2] More specifically, the substance was what is known as XLR-11, one of several compounds that may be used in solution to treat leafy plant material which may then be smoked for its intoxicating effects. Such products are generically known as spice, K2, or synthetic marijuana. What was involved in this transaction, however, was fifty-five grams of powdered XLR-11.

[¶4]   On November 18, 2013, the officers spoke to Browning.  Between May 2012 and February 2013 she purchased spice exclusively from Cranford.  Thereafter, until October 2013, she bought it exclusively from Simms.  In each case she obtained two to three pounds per week, paying Cranford $1,200 per pound, and paying Simms $600 per pound.

[¶5]   On April 23, 2014, the officers received a laboratory report relating to the substance obtained in the controlled buy conducted in October of the previous year.  The white powder contained XLR-11.  Two months later they obtained information that Simms was residing at a Casper address and went to speak to him.  While talking to a roommate, the officers detected the odor of marijuana.  During their subsequent execution of a search warrant, they discovered an SKS carbine,[3] ammunition, a digital scale, and approximately 12.2 grams of marijuana in Simms' room.

[¶6]   On August 15, 2014, Natrona County authorities charged Simms with one felony count of conspiring to possess XLR-11 with the intent to deliver it, one felony count of delivering XLR-11, and one count of possessing a misdemeanor amount of marijuana.  Because he had a prior felony conviction, his possession of the carbine led to a contemporaneous federal prosecution[4] for possession of a firearm by a felon.

[¶7]   On April 30, 2015, Simms entered guilty pleas to all three Wyoming charges.  In exchange for those pleas, the State agreed to ask for no more than a six-year maximum sentence on his felony convictions, with the sentences for all Wyoming offenses to run concurrently with one another.  The plea agreement contained no provisions as to how his Wyoming sentences should run in relation to his federal conviction.

[¶8]   By the time of his Wyoming sentencing hearing on August 14, 2015, Simms had been sentenced to incarceration for three years and six months in a federal penitentiary, and apparently was then being held by federal authorities.[5]  After clarifying that the plea agreement in no way governed the relationship between the federal and state sentences, the district court asked the parties for their sentencing recommendations.  The prosecutor proposed that Simms serve concurrent terms of four and one half to six years on each of the felony convictions and 112 days on the misdemeanor conviction, and that he receive 112 days credit against each of those sentences.  He also asked that the sentences be served consecutively to the federal sentence.  Simms's counsel proposed that he serve two to four years on his felony convictions and that his aggregate Wyoming sentence run concurrently with the federal sentence.

---

[3] A Soviet-designed semi-automatic weapon, the SKS was first produced shortly after World War II.

[4] The record provides little information about the federal case.  We have no idea about the charging date, when he entered his guilty plea, or the exact dates he was sentenced and taken into federal custody.  Nor do we know the substance of any federal plea agreement or the terms of his sentence beyond its duration.

[5] Simms was scheduled to appear in federal court for a purpose not disclosed by the record on July 24, 2015, and the State sought and received a writ of habeas corpus ad prosequendum directing the United States Marshall for the District of Wyoming to make Simms available for the state sentencing hearing.

[¶9]    The district court followed the State's recommendation in nearly all respects, but lowered the minimum term of the felony sentences to three and one half years.  It issued its judgment and sentence to that effect on September 9, 2015.  Simms was taken to the federal correctional facility in Florence, Colorado on September 10, 2015, and took no appeal from his Wyoming convictions.

[¶10]  On July 25, 2016, Simms filed a motion for sentence reduction under Wyoming Rule of Criminal Procedure 35(b),[6] and supported it with an affidavit.  He did not challenge the legality or procedural propriety of any of his sentences, state or federal, or their administration, but instead asked that his aggregate state sentence be altered to run concurrently with the federal sentence he was then serving so that he might be eligible to participate in his federal facility's drug treatment program earlier.

[¶11]  The district court denied the motion the next day.  It stated:

> The court, having reviewed and considered the request, as well as the court's file on this matter, finds that the court is able to decide the issues raised in the motion without a hearing or progress report, and that no showing has been made pursuant to W.R.Cr.P. 35(b) to justify or require a reduction or modification of the defendant's sentence.

Simms thereafter filed a timely notice of appeal.

## DISCUSSION

**Denial of the Motion Without a Hearing**

---

[6] W.R.Cr.P. 35(b) provides as follows:

> (b) *Reduction*. -- A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one year after the sentence is imposed or probation is revoked, or within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation.  The court shall determine the motion within a reasonable time.  Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.  The court may determine the motion with or without a hearing.

3

[¶12] A district court enjoys broad discretion to grant or deny motions for sentence modification or reduction under W.R.Cr.P. 35(b). *Palmer v. State*, 2016 WY 46, ¶ 8, 371 P.3d 156, 158 (Wyo. 2016); *Chapman v. State*, 2015 WY 15, ¶ 7, 342 P.3d 388, 391 (Wyo. 2015). This Court accords considerable deference to such decisions and will not disturb them so long as they are not unreasonable based upon the information before the district court. *Chapman*, ¶ 7, 342 P.3d at 391. Although the purpose of the rule is to permit a defendant an opportunity to present a second argument for a lesser sentence based on new information, the court is free to accept or reject his rationale for a sentence reduction, which sets a high bar for the defendant to overcome on appeal. *Id.* ¶¶ 7, 11, 342 P.3d at 391-92. Furthermore, the language of Rule 35(b) expressly provides that the district court may determine the motion with or without holding a hearing. *Id.* ¶¶ 10, 12, 342 P.3d at 392, *see also* n.6 *supra*.

[¶13] The district court sentenced Simms a bit more than ten months before he filed his sentence reduction motion. The court knew at sentencing that he had just received a federal sentence related to something other than his Wyoming drug offenses. Those Wyoming crimes spanned nearly two years and netted Simms and Cranford thirty-five to seventy times their investment in XLR-11. Furthermore, the court agreed to the six-year maximum sentences for Simms's two felonies, which—per the parties' plea bargain— were to be served concurrently with one another. That bargain left the court to determine whether his state sentences would run concurrently with or consecutively to his 42-month federal sentence. The court chose the latter as the more appropriate response to Simms's criminal acts.

[¶14] Simms has not claimed that the district court was unreasonable in structuring his Wyoming sentences as it did, and we see nothing in the record indicating that ten months later the court acted unreasonably by retaining that structure. It did not abuse its discretion in declining to run the Wyoming sentence concurrently with the federal sentence without a hearing.

**The Two Remaining Issues**

[¶15] Simms asserts that the district court should have granted him credit against not only his Wyoming sentences, as it did, but also against his federal sentence, for the 112 days he was confined by Wyoming solely on the state charges prior to his guilty plea and sentencing. He also contends that somehow the later-imposed Wyoming sentence should leapfrog over the federal sentence that he began serving prior to his Wyoming sentencing hearing. Simms did not raise either of these issues in his sentence reduction motion.

[¶16] This Court does not consider issues advanced for the first time on appeal unless they are jurisdictional or fundamental in nature. *Silva v. State*, 2014 WY 155, ¶ 9, 338 P.3d 934, 936-37 (Wyo. 2014). Perhaps more importantly, even when a pro se litigant such as Simms files an appellate brief, we have consistently refused to address claims

that are not supported by cogent argument or citation to pertinent authority. *Id.* ¶ 7, 338 P.3d at 936. These latter omissions are particularly striking in this case.

[¶17] As to the sentencing credit issue, Simms does not suggest that he will lose the benefit of the 112 days of credit when he begins to serve his Wyoming sentences. Nor does he direct us to anything suggesting that the district court had the power to award credit on a federal sentence.

[¶18] As to the issue of which jurisdiction's sentence should be served first, Simms directs us to nothing that either requires or enables the district court to interrupt a federal sentence he had already begun to serve in favor of beginning a consecutive Wyoming sentence. To the contrary, once Simms began serving his federal sentence, he fell within a rule recognized by both this Court and the United States Court of Appeals for the Tenth Circuit. It is illegal to interrupt the continuous service of a sentence by interposing one handed down in a different case. *Cothren v. State*, 2012 WY 102, ¶¶10, 11, 281 P.3d 352, 355 (Wyo. 2012) (citing *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930)).

[¶19] Simms did not raise the credit issue or the sentencing sequence issue in the district court, and he now offers no cogent argument or pertinent authority in support of his position. Accordingly, these arguments will receive no further consideration.

## CONCLUSION

[¶20] The district court's denial of Simms' motion for sentence reduction is affirmed.